By the Court.—Freedman, J.
At the trial a verdict was directed upon the evidence of the plaintiff, in favor of the defendant, and plaintiff’s exception to such ruling was ordered to be heard in the first instance at the general term. This disposition of the case presents for review the single question, whether, upon plaintiff’s own showing, it affirmatively appeared *395 that, on the day of the occurrence of the fire, the insured premises were vacant or unoccupied, and had been so for more than thirty days prior thereto, within the meaning of the prohibitory clause of the policy.
The language of the clause is : “ If the above-mentioned premises shall become vacant or unoccupied, and so remain for more than thirty days, without notice "to and consent of this company in writing, . . . this policy shall be void.”
The facts of the case, with the exception of the language of the policy, do not materially differ from the state of facts presented by the same plaintiff in his action against the Merchants’ Insurance Company, recently decided by this court. The words of the policy there were, that the policy should become void in case the insured premises should be “ vacant and unoccupied, &c.,” and in view of the use of the copulative conjunction it was ’ held that, inasmuch as vacancy and non-occupation had to concur to avoid the policy, and the premises were not shown to have been vacant, however the fact may have been with regard to their occupation, the direction of the verdict in favor of the plaintiff constituted a proper determination of the issues (44 N. Y. Super. Ct. 444.)
The decision referred to calls upon ns to hold that the state of facts existing in the case at bar is not sufficient to constitute a vacancy within the meaning of the policy, and the only question remaining is, whether the premises were shown to have been left unoccupied.
The meaning of the word “unoccupied” necessarily varies with its use in different policies, and to determine it correctly in a particular instance, regard must be had to the intention of the parties as expressed by the particular policy, and the subject-matter in respect to which the term is used.
Thus, in Keith v. Quincy Mutual Fire Insurance Company (10 Allen, 228), which was an action brought *396 upon a policy of insurance upon a wooden building used as a trip-hammer shop, and in which the defense interposed was non-occupancy for over thirty days, by which the policy by its terms became void, the court charged as follows :
“It is not sufficient to constitute occupancy, tha,t the tools remained in the shop, and that the plaintiff’s son went through the shop almost every day to look around and see if things were right; but some practical use must have been made of the building, and if it thus remained without any practical use for the space of thirty days, it was, within the meaning of the policy, an unoccupied building for that time, and the policy became void.”
On appeal this view was sustained, and the exceptions overruled.
In Paine v. Agricultural Ins. Co. (5 T. & C. 619), the policy provided, that in case the premises should be sold and possession given, or the house left unoccupied, without giving immediate notice to the company, the policy shall cease, and be of no force and effect %
The plaintiff having been separated from his wife, and being in ill health, left the dwelling-house insured, in the middle of January, and removed to the house of his son, in Albion, about twenty miles distant, and continued to board with his son until March 30, when the fire occurred. No one inhabited the dwelling-house during plaintiff’s absence, except one night, when the plaintiff slept there. Plaintiff, on his removal to Albion, left all his household goods and effects in the house in the same condition as when he lived in it, and during his absence visited the house oh different occasions, and maintained a general supervision over it.
The referee, on this state of facts, held that the house was not unoccupied, within the clause of the policy. ' • ■
*397 On appeal this was held error, and a new trial was ordered. In delivering the opinion of the court on that occasion, Mullin, J. says :
“ Occupation of a house is living in it, not mere supervision over it. It is not necessary that some person should live in it every moment during the life of a policy containing such provision as is contained in the policy before us, but there must not be a cessation of occupancy for any considerable portion of time. For what length of time it may remain unoccupied will depend upon the circumstances of each case, and the jury or the referee must determine the question, in view of the consideration that led to the incorporation of the provision into the policy, and the necessity that not unfrequently arises for persons insured to leave temporarily their dwelling-houses. As the policy requires immediate notice of the cessation of occupancy, the abandonment of the premises must be very short indeed, that will not work a forfeiture of it, &c., &c.”
In Cummins v. Agricultural Ins. Co. (67 N. Y. 260), the policy contained the following provision : “If the dwelling-house or houses hereby insured become vacated by the removal of the owner or occupant, this policy shall be null and void.” The court of appeals held that there was a material distinction between this provision and the provision in Paine v. Agricultural Ins. Co.; that in the case.of Paine the mere fact that the house was left unoccupied was sufficient to avoid the policy, according to its express terms, unless immediate notice were given ; but that in the case of Cummins, the condition was superadded that it must have been vacated by the removal of the owner or occupant, and that these words referred to a permanent removal and entire abandonment of the house as a place of residence. .
Ashworth v. Builders’ Ins. Co. (112 Mass. 422), was *398 an action of contract upon a policy of insurance against loss by fire on a “ dwelling-house” and a “ barn near by.” The application described the premises as used by the assured for farming purposes. The policy provided that “buildings unoccupied are not covered by this policy, unless insured as such.” The dwelling-house was only used by the assured and his servants, for the purpose of taking their meals there when engaged in carrying on a contiguous farm, and the barn was only used for the purpose of storing hay and farming tools. Colt, J.: “The policy expressly declares upon its face, that buildings unoccupied are not covered, unless insured as such. This is descriptive of the subject-matter of the insurance. It is a stipulation on the truth and fulfillment of which the contract depends, and the insurer has a right to insist on a strict compliance. It is decisive of this case .... for the facts stated do not show an occupancy of either the house or barn, within the meaning of the policy. Occupancy, as applied to such buildings, implies an actual use of the house as a dwelling-place, and such use of the barn as is ordinarily incident to a barn belonging to an occu-pied house, or at least something more than a use of it for mere storage.
“ The insurer has a right, by the terms of the policy, to the care and supervision which is involved in such an occupancy.”
Judgment was given for the defendant.
In the case of Gibbs v. Continental Fire Ins. Co. (13 Hun, 611-620), the policy contained a provision, that should the premises become unoccupied, without the consent of the company, this policy shall be void. The plaintiff had slept at night, for some time, but for how long did not clearly appear, at the house of her daughter, which next adjoined that occupied by the plaintiff, ■but she had never abandoned the premises, and, although lodging at her daughter’s house, her fur *399 nitnre and wearing apparel were left at her qwn. She returned daily to the premises insui’ed, and spent the day there. It was held the house was not unoccupied within the meaning of the policy.
In the case at bar, and by the policy in question, the Adriatic Fire Insurance Company insured the plaintiff against loss or damage by fire or lightning, to the amount of $7,575, as follows :
“ $2,000 on his two-story and attic frame dwelling-house, and three-story tower thereon; slate roof, 28 x 37 feet, and two-story and attic slate-roof addition, 16 x 17 feet.
“ $750 on household furniture, useful and ornamental, linen, beds, bedding, plate, plated ware, printed books, wearing apparel, and family stores contained therein.
“ $350 on frame wash and woodhouse, kitchen and privy, about 40 feet in rear of the above-described dwelling.
' “ $1,500 on barn and sheds attached.
“$750 on carriage-house.
“$400 on frame dwelling.
“ $150 on outbuildings, detached, about 100 feet; situate in the town of Lloyd, Ulster county, 1ST. Y., being about one mile south from Highland Village.
“$250 on produce in barn and on premises.
“'$75 on live stock ; in case of loss, not more than $50 to be paid for any one cow.
“$500 on four horses, being $125 on each horse.
“ $400 on one carriage ; $150 on one carriage.
“$150 on two open carriages, being $75 on each.
“ 150 on three sets of harness, being $50 on each, all contained in above carriage-house and premises.”
The premises thus insured constituted plaintiff’s farm and summer residence. The farm was managed *400 by a farmer in plaintiff’s employ, who received as part of his compensation the use of the smaller dwelling mentioned in the policy, and who, with his wife and children and a gardener, lived upon it throughout the entire year. • The plaintiff, who does business in the city of New York, with his wife and children, actually lived upon it during the summer and part of the fall only. About November 20,1876, the plaintiff, with his family, left the premises and returned to his city residence to remain there for the winter, leaving in the main dwelling "mentioned in the policy his piano and. all his furniture, cooking utensils, beds, mattresses, and the summer clothing of himself and family. All the premises insured and the property remaining therein were left in charge of the farmer. As already stated, this farmer and his family resided in the frame dwelling mentioned in the policy, and during the absence of the plaintiff and his family they had permission to live in the main dwelling, of which they had the key. It was the particular duty of the farmer to see that the main dwelling, which could be seen from the farmhouse, was well ventilated 'and properly ' watched, and he, or some member of his family, regularly once a week did go into and through it, and open all the windows for the purpose of ventilation. The house was then carefully closed again, the windows bolted on the inside-and firmly secured, and the outer door locked, and, thus secured, the house was left for the ensuing week. The plaintiff, generally in company with Ms wife, visited the premises once a fortnight, to see that the farmer took good care of them. The plaintiff was in the habit, on these visits, of opening the main dwelling, going through the rooms, and everything therein ; but neither he nor his wife, nor any other member of his family, passed a night in the house during the winter preceding the fire. About three days before the fire the plaintiff and his wife *401 were there, on one of their usual visits, and with painters, going through the house with them and giving directions as to the painting to be done. On April 8, 1877, while the premises were used, watched and guarded as aforesaid, a fire occurred, by which the main dwelling with its furniture, and the washhouse, kitchen and privy in the rear were destroyed, the loss exceeding the amount of the insurance.
Upon this state of facts it seems clear that, if the buildings destroyed were, at the time of the fire, in fact unoccupied, within the true meaning of the clause of the policy, and had so remained for the space of thirty days, the intention of the plaintiff to return to them as a summer residence is wholly immaterial. True, the clause of the policy is to be construed in view of the situation, and the character of the property described in the policy, and the ordinary incidents and contingencies affecting the use to which the property, and other property of like character and similarly situated, is subject, and hence, though it has been held that occupation of a dwelling-house is living in it, it has also been held that the same construction cannot be applied to a saw-mill, church building or school-house, described as such in the policy (Whitney v. Black River Ins. Co., 72 N. Y. 117).
But the buildings in question were not described in the policy as a summer residence, nor is there any proof in the case upon which the company can be charged'with knowledge of their precise character and use. The construction of the clause cannot, therefore, be limited by any such consideration.
If, therefore, the policy in question only covered the main dwelling, or if, covering, as it does, severally, buildings ostensibly used for dwelling purposes, it provided that, if any one of these buildings should become unoccupied, and so remain for more than thirty days, without notice to and the consent of the company in *402 writing, the policy should be void as to the building so becoming and remaining unoccupied, there would, upon the evidence, and such of the authorities as seem to hold that in such a case the occupation called for is an occupation in the popular, and not the legal, sense of the term, be room for argument that, at least as to the main dwelling, the policy had ceased to exist. It may also be conceded, as a general rule, that if, under a policy, the contract of insurance comes to an end with regard to the main dwelling, by reason of non-occupation, it also comes to an end with regard to such of the outbuildings as are so connected with the main building that they cannot be deemed occupied for any practical purpose as long as the main building is and remains unoccupied.
But the difficulty in the present, case is that the word “premises” covers the whole property insured, dwellings, outhouses, and appurtenances, together composing one establishment, the farm of the plaintiff; and unless the whole premises became unoccupied, the condition was not broken. The condition is invoked to create a forfeiture, and in such a case the rule is that it is to be strictly construed against the underwriter. The precise question arose in Bryan v. Peabody Ins. Co. (8 West Va. 605). The policy was upon “a two-story frame building, standing on leased ground, 25x50 feet; also one-story frame, 12x16 feet, occupied as a hardware store and dwelling, situated in the town of Antwerp, Clarion county, Pa., and stock of merchandise, consisting principally of hardware, oil-well supplies, and pipe-coupling machines, all contained on first floor of the above building.” The clause as to vacancy or non-occupation was precisely like the one now before the court, and the proof showed that the dwelling part of the building, last described, had become and remained vacant for more than thirty days preceding the fire. In delivering the opinion of the supreme *403 court of appeals, Moore, J., says : “The clause must be construed to mean and apply to the whole or entire premises as to its becoming vacant or unoccupied, and not merely to a part thereof. Had the company intended otherwise, it is reasonable to suppose it would have so declared. It would not have contented itself with the general and comprehensive expression, 1 above-mentioned premises,’ but would have manifested its meaning and intention in common and plain, language, such as above-mentioned premises or any part thereof. Thus impressed, I hold that Bryan did not violate his contract in not giving notice of the vacating of a part of the premises.”
I can perceive no reason why a different rule should prevail in the case at bar. Such, then, being the construction to be placed upon the contract, and it appearing that the farmer and his wife and children, and the gardener, were upon the farm and in charge of the same as above stated, at the time of the fire, and had actually and continuously lived upon part of the insured premises for more than thirty days preceding the fire, while engaged in'guarding the whole, the conclusion is unavoidable that the premises were not unoccupied within the meaning of the policy, and that it was error to direct a verdict for the defendant. For the same reasons, a simple dismissal of the complaint would have been equally erroneous.
Plaintiff’s exceptions must be sustained, the verdict set aside, and a new trial ordered, with costs to the plaintiff to abide the event.
Sedgwick, J., concurred.